```
                  UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF INDIANA
                        HAMMOND DIVISION

ELIJAH ROBERSON,                 )
                                 )
          Plaintiff              )
                                 )
     v.                          )   Case No. 2:04 cv 396
                                 )
JO ANNE B. BARNHART,             )
COMMISSIONER OF SOCIAL SECURITY  )
                                 )
          Defendants             )
```

OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment filed by the plaintiff, Elijah Roberson, on May 23, 2005.  For the reasons set forth below, this motion is **DENIED**.

Background

The plaintiff, Elijah Roberson, initially applied for Supplemental Security Income on July 31, 2001, alleging a disability onset date of November 1, 1999 for chronic pulmonary insufficiency and discogenic and degenerative back disorders.[1] (Tr. 105, 29-30)  The claim was denied initially on July 1, 2002 and upon reconsideration on February 28, 2003. (Tr. 29-30) Roberson requested a hearing before an Administrative Law Judge ("ALJ") on April 10, 2003, and a hearing was held before ALJ William J. Wilkin on January 24, 2004. (Tr. 62, 261) Subsequent to the hearing in which Roberson and Vocational Expert ("VE") Michelle Peters testified, the ALJ denied Roberson's application by written decision dated March 17, 2004. (Tr.17-23)  Following a

---

[1] This is Roberson's third application for disability benefits. (Tr. 264)

denial of his request for review by the Appeals Council on September 3, 2004, Roberson filed a complaint in this court on September 28, 2004. (Tr. 5)

Roberson was born on September 24, 1962 and was 41 years old at the time of the ALJ decision. (Tr. 268) He is 5'11" tall and weighs 211 pounds. (Tr. 268) He smoked from age 11 until at least July 2003, although he stated at the January 2004 ALJ hearing that he had stopped smoking eight months previously.  (Tr. 236, 283) He also had suffered from alcoholism until January 2002, although he stated at the hearing that he never had problems with alcohol. (Tr. 206-07, 283) He is married and lives in East Chicago, Indiana with his wife and daughter. (Tr. 268-69) He completed ninth grade in special education classes, and he cannot read or write. (Tr. 291)  He watches television all day, and he does not do chores around the house, drive, or participate in any activities. (Tr. 279-80)  He worked as a monster dump truck driver from 1980 until October 1999, which required him to sit and drive all day. (Tr. 270-72) He left this job because of back pain. (Tr. 273)  He then worked in maintenance for two weeks at a housing complex in 2001 which involved cleaning, vacuuming, and picking up trash.  (Tr. 274) He left this job because he was having difficulty walking and bending.  (Tr. 275) Neither job required him to lift or carry more than 10 pounds. (Tr. 90-91)

In a Disability Adult Report completed September 29, 2001, Roberson stated that he was having difficulty with breathing and with his back, and that he had tried to work but stopped because

2

the chemicals around him affected his breathing. (Tr. 80)  On September 3, 2002, Roberson stated in his Reconsideration Disability Report that his condition had worsened in that he had to take breathing medication four times a day, that he had more pain in his back and muscles, that he was always tired and short of breath, and that he could not lift anything without pain. (Tr. 109-11)  However, a Disability interviewer did not observe Roberson to have any breathing difficulties during the personal interview connected with his reconsideration report. (Tr. 113-14) On February 18, 2003, Roberson reported that he showered and got dressed slower because he had to stop to use an inhaler twice and rest for 15 minutes during each of these activities. (Tr. 115) He also stated that his breathing limited him to walking 3/4 of a block or climbing four steps at a time and that his back pain and spasms prevented him from lifting and carrying more than five pounds. (Tr. 115)

   Dr. Kain Kumar treated Roberson from September 2, 2001 until May 9, 2002. (Tr. 118-148)  Dr. Kumar's notes are scant and largely incomprehensible, but they generally reference back pain. (Tr. 118-24, 142-46)  On December 21, 2001, Dr. Kumar completed a medical release in which he stated that Roberson had chronic low back pain and ankle problems which limited his ability to bend and lift and prevented him from working until February 21, 2002, when he could return on a part-time basis. (Tr. 147) Around January 30, 2002, Dr. Kumar diagnosed Roberson with chronic low

back pain and a weak leg on a form for the Disability Determination Bureau ("DDB"). (Tr. 119)

On January 4, 2002, Dr. Kumar referred Roberson to Dr. S.K. Sunder for an EKG because he was complaining of chest pain. The results of this test were normal. (Tr. 139) Myocardial stress tests completed by radiologist Dr. Samuel Moses the same day also were normal. (Tr. 140-41)

Dr. Kumar also referred Roberson to Dr. Ranon Udkoff, who performed x-rays and CT scans on Roberson's cervical spine, lumbar spine, and both ankles on January 9, 2002. (Tr. 125-38) The cervical tests showed a loss of cervical lordosis with "mild C5-6 spondylosis and a 2mm. lateralizing bulge/ridge at the C3-4 level resulting in mild neural foraminal stenosis" and "[m]oderate right apical bullous changes in the lung." (Tr. 125, 130) The lumbar x-rays showed mild discogenic disease at L5-S1 and mild disc space narrowing at T12-L1, and the CT scan showed a 33mm. bulge at L4-5 "to result in a mild to moderate central canal stenosis" and "moderate inferior right neural foraminal encroachment with a question of right L5 impingement in the lateral recess." (Tr. 128, 134)  Roberson's ankles and feet were normal except for a small calcaneal spur on his left foot. (Tr. 129, 131, 138)

On March 7, 2002, Roberson went to Dr. Carmel Ernest of First Valley Medical Group complaining of right shoulder, arm, and chest pain. (Tr. 224) X-rays of Roberson's shoulders and chest were normal except for "diffuse interstitial lung disease,"

4

which radiologist Moses stated was either acute or chronic. (Tr. 223) Lumbosacral x-rays taken on March 23, 2002 were normal, with no spondylolysis or spondylolisthesis. (Tr. 217)

On April 16, 2002, Dr. Ernest referred Roberson to Dr. Pradeep Damle for his shortness of breath.  (Tr. 211) Roberson reported to Dr. Damle that his shortness of breath progressively worsened, that he could climb a flight of stairs or walk three blocks, but that he got tired from walking. (Tr. 211) Dr. Damle decided to do a CT scan on April 19, 2002, which was unremarkable except for "diffuse emphysematous change" and a small opaque node in the right lung. (Tr. 202-03) The CT scan confirmed that Roberson did not have interstitial pulmonary disease. (Tr. 203) Lab reports from April 22, 2002 also showed a "mild obstructive lung defect" with a "mild decrease in diffusing capacity." (Tr. 199)  On May 3, 2002 Roberson reported to Dr. Ernest that he felt fine. (Tr. 193) On June 24, 2002, Dr. Ernest reviewed the results of the latest CT scan and determined that the "main factor affecting [Roberson's] prognosis is tobacco use and smoking," recommended that Roberson stop smoking, and prescribed a Combivent inhaler. (Tr. 191)

On June 26, 2002, Dr. Jagvinder Singh evaluated Roberson for the DDB.  (Tr. 149-154)  Roberson complained of low back pain, calluses on his feet, high cholesterol, acid problems, and breathing problems. (Tr. 149) Although Dr. Ernest had prescribed the inhaler two days earlier, Roberson reported that he was not using medication for his chronic obstructive pulmonary disease

5

("COPD"). (Tr. 150) Dr. Singh did not observe Roberson having any problem walking from the waiting room to the examining room, getting on or off the examination table, or taking off his shoes. (Tr. 150) During the medical examination, Dr. Singh found that Roberson's lungs were "symmetric with normal excursions. Clear to auscultation throughout." (Tr. 150)  He also found that Roberson had "no paravertebral muscle spasm, tenderness, crepitus, effusion, or deformity," and full motor strength in all muscle groups. (Tr. 152) Dr. Singh diagnosed Roberson with "mild" COPD, citing a recent pulmonary function test that found "minimal lung hyperaeration, as well as a history of low back pain, acid reflux disease, and hyperlipidemia." (Tr. 152-53) He further opined that Roberson could "stand and/or walk for at least six hours" with no restriction on sitting, occasionally lift and carry up to 50 pounds, and frequently lift 25 pounds. (Tr. 152)

On June 28, 2002, Dr. Anne M. Khong completed a Consultation Request in which she summarized the records above, as well as the findings of an earlier ALJ decision denying benefits, and found that Roberson was not fully credible because his condition appeared stable with medications and did not seem severe enough to prevent all forms of work. (Tr. 156) Because the pulmonary tests showed only mild obstructive disease and the spinal tests and examinations showed improvement since the previous ALJ decision with no active complaints of back pain, Dr. Khong concluded that Roberson was "capable of [medium] work [with] environmental precautions." (Tr. 156-57)  The same day, she

6

affirmed an RFC assessment by J. Croff which determined that Roberson could stand, walk, or sit up to six hours in an eight hour day, occasionally lift 50 pounds, frequently lift 25 pounds, and occasionally climb and crouch. (Tr. 158-65) On July 19, 2002, she issued an amended Consultation Request and RFC incorporating the findings of Dr. Singh and affirming the previous RFC with the addition of avoiding concentrated exposure to extreme heat and cold and avoiding even moderate exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 173)

On August 12, 2002, Roberson complained to Dr. Ernest of "lumps" developing in his lower left side and upper right chest when he walked for long periods of time. (Tr. 183) The same day, Roberson underwent lumbosacral and chest x-rays as a follow-up to the April 2002 tests. (Tr. 186) The lumbosacral x-rays were normal, and the chest x-rays showed "diffuse interstitial lung disease" that was unchanged from the earlier tests. (Tr. 186) On August 21, 2002, Roberson returned to Dr. Ernest and stated that he felt fine and had no complaints. (Tr. 178)

On February 27, 2003, Dr. Suresh Mahawar evaluated Roberson for the DDB. (Tr. 228-30)  He noted that Roberson complained of low back pain and claimed to have been diagnosed with muscle spasms which got worse with bending and lifting and that nothing helped. (Tr. 228) Roberson further reported that he had suffered from shortness of breath since 2002, which got worse with walking, talking too long and talking fast, and better with rest and medication. (Tr. 228) Roberson also stated that he could not walk

7

more than one-half a block or climb more than one flight of stairs. (Tr. 228)  Dr. Mahawar did not find any significant tenderness or muscle spasm in Roberson's back, and examination of his lungs did not reveal wheezing, rales to auscultation, or dullness on percussion. (Tr. 229) Dr. Mahawar's evaluation of Roberson was essentially normal, with Roberson displaying only mild difficulty in squatting, arising, and hopping on one leg. (Tr. 229-30)

On July 14, 2003, Roberson went to the hospital complaining of mild shortness of breath exacerbated by exertion after he ran out of his combivent inhaler. (Tr. 238) He was discharged with an inhaler refill and ordered to take 2 puffs 4 times a day and to stop smoking. (Tr. 243)

During the ALJ hearing on January 27, 2004, Roberson testified that his back pain was the primary reason he was seeking benefits, that it had stayed the same in intensity over the years, and that it lasted all day. (Tr. 275-76) He thought he could stand or sit for up to half an hour before he started to feel pain in his back, that he could walk about a block, that he could bend, stoop, and raise his arms parallel to a seated position without any discomfort, and that he had no problems manipulating things with his fingers. (Tr. 283-84, 290) He said that he could lift a gallon of milk from the floor without a problem and do the same repeatedly for "a little bit" until the pain "hits." (Tr. 288) He also stated that he could lift a sack of potatoes. (Tr. 289) He further testified that he had suffered from emphy-

sema since 2001 and that he got short of breath walking a block. (Tr. 290) He stated that after he used his inhaler, he needed 20-25 minutes to wait until he got his breath back. (Tr. 290) He said that in addition to the combivent inhaler, he took Vioxx and Celebrex for his back and Zocor for cholesterol. (Tr. 276-77, 288)

Following Roberson's testimony, VE Peters determined that Roberson's previous driving position was semi-skilled medium work under the Dictionary of Occupational Titles ("DOT"), but light according to testimony, and that the janitorial work Roberson performed was unskilled and medium in demand. (Tr. 298) Next, ALJ Wilkin posed a series of hypotheticals to the VE. (Tr. 297-303) In response to the first hypothetical, for a 41 year old claimant with a ninth grade special education and Roberson's work experience, who further was limited to medium work in a clean atmosphere with no repetitive bending, stooping, crawling, or climbing and the ability to change position at will, VE Peters found that Roberson could perform 1,500 counter clerk, 3,500 hand packaging, and 4,000 assembler positions. (Tr. 299) In response to hypothetical two for light work with the same restrictions, VE Peters concluded that Roberson could perform 2,500 assembly, 2,000 hand packaging, and 1,500 inspecting positions.  In hypothetical three for unskilled sedentary positions, VE Peters determined that Roberson could perform 1,500 assembly, 700 hand packaging, and 500 inspector jobs. (Tr. 300) In hypothetical

9

four, the VE stated that Roberson could not perform any jobs if he could not work an eight hour day. (Tr. 301)

In finding that Roberson was not disabled, the ALJ considered Roberson's age and education, as well as his complaints regarding his back, breathing, and high blood pressure, his inability to work around chemicals in his previous job, his worsening condition, and his statement that he had begun to use his inhaler four times a day. (Tr. 18) ALJ Wilkin considered Roberson's history of breathing problems including the June 24, 2002 pulmonary function test, the June 26, 2002 examination, and the June 27, 2002 chest x-ray, all of which demonstrated "minimal" or "mild" COPD. (Tr. 19) The ALJ also considered Roberson's trip to the hospital when he ran out of his combivent medication, as well as the results of Dr.Mahawar's February 27, 2003 examination and spirometry test, which also showed only a mild restriction. (Tr. 19)

With respect to Roberson's back complaints, ALJ Wilkin reviewed the results of Roberson's x-rays and CT scan from January 2002, and x-rays from June 27, 2002 and August 12, 2002, all of which reflected either a normal spine or mild problems. (Tr. 19) He also considered Roberson's complaints of sharp pain and limited ability to walk or climb compared to Dr. Mahawar's examination, which did not reveal any abnormalities in Roberson's spine, showed that Roberson had negative 70 bilateral leg raises, had no significant tenderness or muscle spasms, exhibited a normal gait, could walk tandem, on his toes, or heels, and had

10

only mild difficulty squatting and rising or hopping on one foot. (Tr. 19)

Based on this evidence, ALJ Wilkin determined that Roberson's back pain and asthma were "severe" impairments but that they did not meet a Listing. At Step Four, the ALJ determined that Roberson had an RFC for "[l]ight work in a clean atmosphere, no repetitive bending or stooping, no crawling or climbing, and should be able to change positions at work." (Tr. 21) In reaching this conclusion, ALJ Wilkin found that Roberson's complaints of severe low back pain were not consistent with Dr. Mahawar's examination and Roberson's normal x-rays. (Tr. 20) The ALJ further noted that Roberson's complaints of shortness of breath were not consistent with the pulmonary tests showing only a mild restriction. He also considered the medical records indicating that the main factor in Roberson's pulmonary problems was his continued smoking. (Tr. 20) However, because ALJ Wilkin found that Roberson could not perform his past work, he proceeded to Step Five.

At Step Five, ALJ Wilkin found that Rule 202.16 in the Medical-Vocational Guidelines directed a conclusion that Roberson was not disabled. Accordingly, the ALJ found that Roberson could perform 2,500 assembly, 2,000 hand packer, and 1,500 inspector jobs in the regional economy, which was consistent with the second hypothetical, for light work, that ALJ Wilkin had posed to VE Peters.

Although Roberson was represented at the time of the ALJ hearing, he brings this appeal *pro se.*

## Discussion

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence.  42 U.S.C. ß405(g)  ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); **Golembiewski v. Barnhart**, 322 F.3d 912, 915 (7th Cir. 2003); **Dixon v. Massanari**, 270 F.3d 1171, 1176 (7th Cir. 2001).  Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." **Richardson v. Perales**, 402 U.S. 389, 401, 91 S.Ct 1420, 1427, 28 L.Ed.2d 852 (1972) (*quoting* **Consolidated Edison Company v. NLRB,** 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed.2d 140 (1938)). *See also* **Sims v. Barnhart**, 309 F.3d 424, 428 (7th Cir. 2002); **Green v. Shalala,** 51 F.3d 96, 101 (7th Cir. 1995).  An ALJís decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. **Golembiewski**, 322 F.3d at 915; **Cannon v. Apfel,** 213 F.3d 970, 974 (7th Cir. 2000).  However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." **Lopez ex. rel. Lopez v. Barnhart**, 336 F.3d 535, 539 (7th Cir. 2003).

Supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act.  The claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability.   20 C.F.R. §416.920.  The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." 20 C.F.R. §416.920(b).  If he is, the claimant is not disabled and the evaluation process is over; if he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits . . . physical or mental ability to do basic work activities."  20 C.F.R. §416.920(c).  Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations.  20 C.F.R. §401, pt. 404, subpt. P, app. 1.  If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling.  However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work.  If, at this fourth step, the claimant can perform his past relevant

13

work, he will be found not disabled. 20 C.F.R. §416.920(e). However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience and functional capacity to work, is capable of performing other work and that such work exists in the national economy.   42 U.S.C. §423(d)(2); 20 C.F.R. §416.920(f).

Roberson's only argument in support of remand is that the ALJ erred in finding that he retained an RFC to perform light work because "[e]ven light duty work causes [him] to stop and use [his] inhaler." (Pl. Brief, p. 1)  A claimant's "residual functional capacity is what [he] can still do despite [his] limitations." 20 C.F.R. §416.945(a).  *See also* SSR 96-8p, at *1. This "assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." SSR 96-8p, at *1. In reaching this RFC, the ALJ first must determine Roberson's "functional limitations or restrictions and assess his . . . work-related abilities on a function-by-function basis."  SSR 96-8p, at *1.

Because Roberson does not claim any mental disabilities, the ALJ must consider functions such as Roberson's ability to sit, stand, walk, lift, carry, push, and pull, as well as relevant manipulative or postural limitations like "reaching, handling, stooping, or crouching" and sensory impairments.   20 C.F.R.

ßß416.946(b), (d).  After this assessment, the ALJ may express Roberson's RFC in exertional terms, such as "light" or "sedentary." SSR 96-8p, at *1. Light work involves lifting up to 20 pounds occasionally and lifting and/or carrying up to 10 pounds frequently.  It may require either a "good deal of walking," such as six hours in an eight hour day, or else it may involve sitting for most of the day and operating arm-hand or leg-foot controls. *See* 20 C.F.R. ß 416.967(b); SSR 83.10, at *5.  In reaching an RFC determination, the ALJ must explain his conclusions in a manner that builds "an accurate and logical bridge from the evidence to [his] conclusion. ***Zurawski v. Halter***, 245 F.3d 881, 887 (7th Cir. 2001)(*quoting **Clifford v. Apfel***, 227 F.3d 863, 872 (7th Cir. 2000)). *See also **Diaz v. Chater***, 55 F.3d 300, 307-08 (7th Cir. 1995).

ALJ Wilkin's RFC determination is supported by the substantial evidence. Although Roberson claims that he has high blood pressure and "recent" neck problems, there is no evidence in the record of hypertension and little mention of cervical abnormalities or pain. (Pl. Brief, p. 1). With respect to Roberson's blood pressure, Roberson told Dr. Damle that he did not have hypertension in April 2002. (Tr. 211) Although he told Dr. Mahawar that he had a history of hypertension in February 2003, he said that his condition was stable. (Tr. 228) He then denied hypertension during a hospital visit in July 2003. (Tr. 238) He also did not mention high blood pressure or state that he was taking any medication for it during the ALJ hearing in 2004. (Tr. 227) As

15

Roberson has expressly denied hypertension twice, once said it was stable, made no claim with respect to it during the hearing, and does not appear to be taking any medication for the condition, the ALJ was under no obligation to consider hypertension in determining Roberson's RFC.

The records of Roberson's alleged neck problems are equally scant.  The only reference to neck pain on the record is a 2001 note from Dr. Kumar, one of Roberson's treating physicians. (Tr. 142) However, Dr. Kumar's subsequent diagnoses of back pain did not reference cervical problems. (Tr. 119, 147)  In addition, Roberson's 2002 cervical x-rays and CT scan showed only mild spondylosis and foraminal stenosis. (Tr. 125, 130)  The balance of the record, and of Roberson's complaints, refers to low back pain.  Given the paucity of both medical evidence and statements by Roberson citing neck pain, the ALJ was correct to focus his analysis on Roberson's lower back. If, as Roberson claims, his condition has worsened with time, his remedy is to file a new application for benefits. *See* **Kapusta v. Sullivan**, 900 F.2d 94, 97 (7th Cir. 1989); **Godsey v. Bowen**, 832 F.2d 443, 444 (7th Cir. 1987).

Turning to Roberson's principle complaints of back pain and spasms, as well as emphysema, the substantial evidence supports the ALJ's finding that Roberson could perform light work. Although Dr. Kumar diagnosed Roberson with chronic low back pain, he released him to work on a part-time basis in February 2002 even with some limitations on his ability to bend and lift. (Tr.

16

147) Like Roberson's cervical x-rays, the lumbar x-rays and CT scans taken in January 2002 showed only mild or moderate changes and stenosis. (Tr. 128, 134)  X-rays taken in 2003 were normal. (Tr. 217) Roberson did not display any spinal muscle spasms or tenderness during Dr. Singh's June 2002 physical examination, and he exhibited full muscle strength with no difficulty walking to the exam room, getting on or off the table, or taking off his shoes. (Tr. 150-52)  Similarly, Roberson was able to perform all mobility tests during a February 2003 examination by Dr. Mahawar, with only mild difficulties squatting and arising or hopping on one leg. (Tr. 229-30)  Like Dr. Singh, Dr. Mahawar could not find any significant spinal tenderness or spasms. (Tr. 229) And, as noted by Dr. Khong in June 2002, there was no evidence of any active complaints of back pain on the record as of that date. (Tr. 156-57) Roberson himself testified that he could lift a nearly nine pound gallon of milk repetitively from the floor for "a little bit" and that he could lift a sack of potatoes.  He also denied any manipulative difficulties and said that he could bend, stoop, and raise his arms parallel to a seated position without discomfort. (Tr. 283-84, 288-90)

    Although Roberson suggests in his brief that his emphysema causes the greatest difficulty for him, he testified that his back problems were his primary issue during the ALJ hearing. (Tr. 275-76) Regardless, the overwhelming evidence is that Roberson only had mild COPD that was controlled with his inhaler.  Although Roberson claimed on his September 2001 Disability Report

17

that he was having breathing difficulty, the first evidence on the record regarding lung problems is a March 2002 x-ray that showed "diffuse interstitial lung disease." (Tr. 223)  Subsequent CT scans and lab tests throughout 2002 and 2003 showed only mild pulmonary obstruction, and Roberson was not prescribed an inhaler until June 2002, when Dr. Ernest said the main factor impacting Roberson's breathing problems was his continued smoking. (Tr. 186, 191-211)  Records Roberson provided to Dr. Singh also showed "mild" COPD with "minimal" hyperaeration. (Tr. 152-53)  The record is completely devoid of any comments from examining or treating physicians regarding observed shortness of breath during exertional tests or statements that Roberson could not otherwise breath. Rather, the only record of an event consistent with Roberson's extreme testimony of breathing difficulty was when Roberson ran out of his inhaler medication. (Tr. 243)  Even then, Roberson's difficulty was described as "mild" at the hospital (Tr. 238)  Given this evidence and the careful consideration of the ALJ thereof, the ALJ did not err in finding that Roberson could perform light work in a clean atmosphere with no repetitive bending or stooping and no crawling or climbing. (Tr. 21).

    Finally, the Commissioner briefly states, with no support, that the "ALJ mistakenly stated that the Medical-Vocational Guidelines directed a finding of non-disability." (Comm'r Brief, p. 7 n.3)  The plaintiff does not raise this argument, and without any further explanation from the Commissioner, the court is at a loss as to what the Commissioner means. Rule 202.16 of the

18

Medical Vocational Guidelines directs a finding of "not disabled" when the claimant is between the ages of 18 and 49, illiterate or unable to communicate in English, and has either no previous work experience or experience of an unskilled nature. *See* 20 C.F.R. Pt. 404, Subpt. P, App.2 at 201(h)(1). Roberson was 41 at the time of the ALJ's decision, testified that he was illiterate, and had a history of unskilled work. (Tr. 298) The only limitation that might be considered "nonexertional," and thus rendering the guidelines partially inapplicable, was the ALJ's conclusion that Roberson must work in a clean environment. *See* App. 2 at 200.00. However, even if the plaintiff had raised the argument that Rule 202.16 was inapplicable *and* the ALJ had then erred in finding that Roberson could perform light work regardless of the Rule, no remand would be necessary because VE Peters testified that Roberson could perform a substantial number of sedentary positions. (Tr. 300) Roberson does not challenge this conclusion and in any event, waived the argument by failing to raise it on appeal.

_____

For the foregoing reasons, the Motion for Summary Judgment filed by the plaintiff, Elijah Roberson, on May 23, 2005 is **DENIED**.

ENTERED this 7th day of February, 2006

s/ ANDREW P. RODOVICH
United States Magistrate Judge